UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| JOHN P. RYAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-CV-2285; consolidated with Case Nos. 17 CV-2286, 17-CV-2287, 17-CV-2288, 17-CV-2289, and 17-CV-2290 |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| NATURAL RESOURCES, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## ORDER

Plaintiff, John P. Ryan, has filed pro se Complaints in six different cases, which have been consolidated here.[1] The Complaints collectively allege that the Illinois Department of Natural Resources ("IDNR") and five of its employees violated Plaintiff's constitutional rights and committed a number of torts under Illinois state law. The claims appear to arise from what Plaintiff describes as the unlawful entry onto his property and the warrantless search of his residence and vehicles.

---

[1] Defendants in this matter are the Illinois Department of Natural Resources (case no. 17-CV-2285), Brian T. McReynolds (case no. 17-CV-2286), William P. Cottrell (case no. 17-CV-2287), Chase A. Sanford (case no. 17-CV-2288), Matthew Viverito (case no. 17-CV-2289), and John A. Williamson (case no. 17-CV-2290).

On February 28, 2018, Magistrate Judge Eric I. Long entered an Order (#18) staying this matter because criminal proceedings stemming from the incident in question remained ongoing. The stay was lifted on March 13, 2025. Two months later, Defendants filed a Motion to Dismiss (#59). Plaintiff filed a Response (#62) five days later. For the reasons set forth below, Defendants' Motion to Dismiss (#59) is GRANTED in part and DENIED in part.

## BACKGROUND

The following background facts are taken from the allegations in the Complaints. At this stage of the proceedings, the court must accept as true all material allegations of the Complaints, drawing all reasonable inferences therefrom in Plaintiff's favor. See *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Plaintiff's allegations all relate to an IDNR operation conducted on December 4, 2016, in which Defendants came to Plaintiff's property, arrested him, and conducted a search. None of Plaintiff's Complaints provide a coherent narrative of the events of that day, and cobbling one together by combining the Complaints proves to be a tall task. So, while the following facts appear scattershot and severely lacking in context, that is merely a reflection of the Complaints.

Plaintiff alleges that Cottrell, an agent of the IDNR, "appeared to be under the influence" during the events in question. He also alleges that Cottrell "was not in Illinois official grooming standards at this time." Plaintiff confronted Cottrell in his driveway, at which time Cottrell pointed a gun at him. Per Plaintiff, Cottrell then handcuffed him behind his back and punched him in the face. Plaintiff fell to the

ground, and Cottrell then kicked him in the torso. Plaintiff alleges that Cottrell then told him that he knew his residence and vehicle contained drugs, then commenced a warrantless search of the residence. Plaintiff further alleges that Cottrell stole personal belongings and "fed[e]ral documents" in the course of that search, then "staged evidence" in Plaintiff's vehicle.

Plaintiff claims that Cottrell also "made false statements to a federal agent, the plaintiff's employer and harrassing [sic] phone calls to the plaintiff's family."

Plaintiff's allegations against Sanford are identical to those against Cottrell, down to the word, i.e., Sanford also punched and kicked Plaintiff, and Sanford also appeared to be under the influence of alcohol, etc.

As to Viverito, Plaintiff alleges that he "maliciously conspired to coerce four other agents and or servants of the [IDNR] that his K-9 'Hank' alerted to the presence of contraband inside the plaintiff's residence." Hank also made a positive indication for the presence of illicit drugs on Plaintiff himself, his vehicle, and his aircraft. Viverito allegedly committed theft of Plaintiff's property and "severely damaged at least two aircraft[.]" Specifically, he "tampered with radio and navigational equipment." Plaintiff further alleges that Viverito "fabricated and staged evidence in the plaintiff's automobile[.]" Finally, Plaintiff asserts that Viverito had a reasonable opportunity to prevent physical harm and suffering to Plaintiff, and to his civil rights, but chose not to act.

3

The allegations against McReynolds and Williamson are also identical down to the word. Plaintiff alleges that both men were in a "supervisor position" and that they "had actual knowledge that three subordinant [sic] agents were engaged in conduct that caused pervasive and unreasonable risk to the plaintiff's civil rights." Plaintiff accuses McReynolds and Williamson of condoning much of the conduct already referenced, including the "harassment to the plaintiff's family through obscene phone calls," the fabrication of evidence, and the use of excessive force. Plaintiff also asserts that McReynolds and Williamson both personally participated in the illegal search and the damage to his residence, aircraft, and vehicles. Finally, he alleges that McReynolds and Williamson "assisted with filing a false statement in order to coerce the Vermilion County States Attorney [sic] in order to allow forfeiture of large amounts of private property to the defendant's agency."

In his Complaint against the IDNR itself, Plaintiff alleges a failure to train, discipline, and supervise agents. He also alleges that the IDNR "conspired to make false malicious statements to federal, state and municipal agencies to create false slander and harm in order to conceal the defendants['] unlawful acts against the plaintiff." In that Complaint, as in all of the others, Plaintiff has checked a box corresponding to "This defendant personally participated in causing my injury, and I want money damages." In the same section, in each Complaint, Plaintiff has *not* checked the box corresponding to "The policy or custom of this official's government agency violates my rights, and I seek injunctive relief[.]"

4

Each of Plaintiff's Complaints are form Pro Se Civil Rights Complaints. Section IV, item 1 of each Complaint provides an opportunity for a plaintiff to check a box (or boxes) corresponding to the way (or ways) in which his civil rights have been violated. In each Complaint, Plaintiff has checked all seven boxes; the last of these is labeled "Other," and there Plaintiff lists five more ways in which his rights were violated. Thus, Plaintiff asserts that Defendants violated his civil rights in that they:

(1)     arrested or seized plaintiff without probable cause to believe that plaintiff had committed, was committing or was about to commit a crime;

(2)     searched plaintiff or his property without a warrant and without reasonable cause;

(3)     used excessive force upon plaintiff;

(4)     failed to intervene . . .

(5)     failed to provide plaintiff with necessary medical care;

(6)     conspired together to violate one or more of plaintiff's civil rights;

(7)     committed theft of private and government property;

(8)     made harrassing [sic] phone calls to plaintiff's family and employers;

(9)     made false and untrue statements to federal agents and agencies about the plaintiff;

(10)    fabricated, concealed, and staged evidence; and

(11)    intentionally caused catastrophic damage to the plaintiff's automobile and at least two aircraft.

Plaintiff adds, in his Complaint against the IDNR: "It is imperative that the defendant review the 2nd, 4th, 5th, and 8th ammendments [sic] of the U.S. Constitution to ensure that Illinois citizens will not be deprived of their rights in the future."

Plaintiff acknowledges in his Complaints that he was charged with a number of criminal offenses following the events in question, including aggravated fleeing and eluding and unlawful use of a weapon. Those proceedings were pending when Plaintiff filed his Complaints, and the matter was stayed for a period of years while Plaintiff's trial and appellate proceedings played out. The court takes judicial notice of the docket from Plaintiff's criminal case, Vermilion County case no. 2016-CF-825. That docket indicates that Plaintiff was convicted of Unlawful Use of Weapons and was acquitted of Aggravated Fleeing or Attempting to Elude a Police Officer on December 14, 2018. Plaintiff appealed his conviction, and the appeal was dismissed on March 5, 2025. The stay in this matter was lifted shortly thereafter.

**ANALYSIS**

Defendants' Motion to Dismiss proceeds in part by identifying specific causes of action that Plaintiff has referenced or alluded to, and arguing that he has failed to state any such claim. In other portions of their Motion, Defendants address large swaths of Plaintiff's claims—namely, those arising under the Fourth Amendment and his state law claims—not by addressing each individual potential claim, but instead by arguing that they should all be dismissed on sovereign immunity grounds.

In his brief Response, Plaintiff insists that he has adequately stated claims— through factual "allegations [that] are specific and detailed"—for conducting a warrantless search, false arrest, fabrication of evidence, and malicious prosecution. He

cites the Second, Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution.[2]

Finally, he argues that sovereign immunity, whether under the Eleventh Amendment or

Illinois' sovereign immunity doctrine, does not act to bar his claims.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must

contain "a short and plain statement of the claim showing that the pleader is entitled to

relief[.]" Federal Rule of Civil 12(b)(6) allows for dismissal of a pleading if it fails "to

state a claim upon which relief can be granted[.]" "Dismissal for failure to state a claim

under Rule 12(b)(6) is proper 'when the allegations in a complaint, however true, could

not raise a claim of entitlement to relief.'" *Virnich*, 664 F.3d at 212 (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). "[T]he complaint must contain allegations

that 'state a claim to relief that is plausible on its face' or it is subject to dismissal under

Rule 12(b)(6)." *Virnich*, 664 F.3d at 212 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663

(2009)). The complaint's factual allegations must be enough to raise a right to relief

above the speculative level, meaning the complaint must contain allegations plausibly

suggesting, not merely consistent with, an entitlement to relief. *Id*. "A claim has facial

plausibility when the plaintiff pleads 'factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*.

(quoting *Iqbal*, 556 U.S. at 678).

---

[2] Plaintiff also argues that Defendants' Motion to Dismiss is premature because it was filed "prior to receiving Plaintiff's initial disclosures, which are essential to clarifying the scope and factual basis of the claims." To the extent Plaintiff suggests this purported prematurity is a basis to deny Defendants' Motion, that argument is rejected as unsupported by any law.

While the court must accept the well-pleaded facts in the Complaints as true and draw all reasonable inferences in Plaintiff's favor, the court is not bound to accept legal conclusions as true, and conclusory allegations that merely recite the elements of the claim are not entitled to the presumption of truth. See *id.*; *Burger v. County of Macon*, 942 F.3d 372, 374 (7th Cir. 2019).

*Federal Statutes*

The first section of each of Plaintiff's form Complaints is titled "Jurisdiction." Under this section in each Complaint, in addition to the usual jurisdictional and civil rights statutes, Plaintiff lists the following: 18 U.S.C. § 32 (criminal statute prohibiting "[d]estruction of aircraft or aircraft facilities"); 18 U.S.C. § 1001 (criminal statute prohibiting fraud); 18 U.S.C. § 242 (criminal statute prohibiting deprivation of civil rights); 18 U.S.C. § 1621 (criminal statute prohibiting perjury); 18 U.S.C. § 1028 (criminal statute prohibiting fraud with respect to identification documents); 18 U.S.C. § 1038 (criminal statute prohibiting "[f]alse information and hoaxes").

While Defendants address each of these statutes in various levels of detail, they neglect the broader point: "[I]n general, federal criminal statutes do not provide a private cause of action for civil liability." *Penebaker v. Hitt*, 2023 WL 1879304, at *6 (W.D. Wis. Feb. 10, 2023) (citing *Ragsdale v. Turnock*, 941 F.2d 501, 509 (7th Cir. 1991)). "Indeed, the Supreme Court has explained that it has rarely implied a private right of action under a criminal statute, and where it has done so, there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Lockhart v. HSBC Fin. Corp.*, 2014 WL 3811002, at *8 (N.D. Ill. Aug. 1, 2014).

Nothing in the text of any of the statutes cited by Plaintiff suggests a private cause of action. In fact, in some instances, courts have explicitly found no such action available. E.g., *Stevens v. Jefferson*, 421 F. App'x 639, 640 (7th Cir. 2011) ("As for § 1001, neither criminal statutes generally, nor § 1001 in particular, afford civil plaintiffs a private cause of action." (internal citation omitted)); *Lovelace v. Whitney*, 684 F. Supp. 1438, 1441 (N.D. Ill. 1988) ("18 U.S.C. § 242 ... is a criminal statute which provides no private cause of action."); *Szplett v. Kenco Logistic Servs., LLC*, 2020 WL 1939388, at *3 (N.D. Ill. Apr. 22, 2020) (collecting cases holding that there is no private cause of action under 18 U.S.C. §§ 241, 1001, or 1621).

Moreover, Plaintiff does not suggest in his Response that he has stated a claim under any of these statutes. Failure to respond to an argument results in waiver, and silence implies a concession. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (citing *County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006) ("When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action." (cleaned up))); see also *Myers v. Thoman*, 2010 WL 3944654, at *4 (S.D. Ind. Oct. 6, 2010) ("The Seventh Circuit has clearly held that a party who fails to respond to points made . . . concedes those points.").

Accordingly, to the extent that any of Plaintiff's claims are based upon the above-listed federal criminal statutes, Defendants' Motion to Dismiss is GRANTED as to those claims, and those claims are dismissed.

9

*Second, Fifth, and Eighth Amendments*

While Plaintiff makes bare references to the Second, Fifth, and Eighth Amendments in his Complaint against the IDNR, Defendants argue that he has alleged no facts that would support claims that his rights under those amendments were violated.

With respect to a purported Second Amendment claim, the court agrees with Defendants; there are simply no allegations suggesting some infringement upon Plaintiff's right to bear arms.

As for a potential Eighth Amendment claim, the court observes that "[t]he Fourth Amendment, not the Eighth Amendment, protects individuals against the excessive use of force during an arrest." *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001) (citing *Glisson v. Sangamon Cnty. Sheriff's Dep't*, 408 F. Supp. 2d 609, 625 (C.D. Ill. 2006)). Excessive force claims arise under the Eighth Amendment when brought in the context of prison. *Vasquez v. Raemisch*, 480 F. Supp. 2d 1120, 1129 (W.D. Wis. 2007) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). Plaintiff has made no allegations concerning any time in prison.

A Fifth Amendment claim is perhaps more complicated. As Defendants themselves suggest, any claim under the Fifth Amendment presumably relates to the theft or destruction of property that Plaintiff references on a number of occasions

10

throughout his Complaints. But, they argue, Plaintiff does not "provide any further facts which might show what property was stolen, by whom, or for what purpose."[3]

The court need not delve further into a potential Fifth Amendment claim, because Plaintiff has not responded to Defendants' point, implying a concession. See *Bonte*, 624 F.3d at 466.

Accordingly, any claims that Plaintiff's rights under the Second, Fifth, or Eighth Amendments are dismissed, and Defendants' Motion to Dismiss is GRANTED as to those claims.

*Supervisor Liability*

Defendants next argue that any claims against McReynolds and Williamson based solely on their supervisory roles must be dismissed. Section "1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). "Liability for supervisors is individual, not vicarious. For that reason, simply being atop an organizational food chain does not make a supervisor liable for a subordinate's unconstitutional conduct." *Bostic v. Murray*, 160 F.4th 831, 841 (7th Cir. 2025). In order for there to be personal involvement, "the supervisor must have either caused or participated in the constitutional deprivation at issue." *Id*.

Additionally, the Seventh Circuit has very recently explained:

Some of our cases frame the test for supervisory liability a little differently than we have. One common refrain is that a supervisor can be liable if they "know

---

[3] While this is true, Plaintiff does affirmatively accuse at least Viverito of the "destruction" of his aircraft.

11

about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." [*Backes v. Village of Peoria Heights*, 662 F.3d 866, 870 (7th Cir. 2011) (citation omitted)]. This test, we have said, is another way of saying that supervisors must "act either knowingly or with deliberate, reckless indifference" to incur liability. *Id.* (citation omitted).

*Bostic*, 160 F.4th at 842 n.8.

Plaintiff's Complaints against McReynolds and Williamson—which, again, are identical to one another—contain myriad references to conduct that the two Defendants "condoned": "malicious behavior of at least three subordinates," "fabricated evidence and excessive torts," and "harassment to the plaintiff's family through obscene phone calls." He also alleges that both Defendants, "while acting under the color of law and in a supervisor position[,] had actual knowledge that his subordinates were using excessive force[.]"

Defendants assert that Plaintiff has only pled bare conclusions, pointing out that his Complaints—light on details throughout—offer no well-pled allegations as to where McReynolds and Williamson were or how they may have come to know anything they are alleged to have known. Indeed, conclusory allegations that merely recite the elements of the claim are not entitled to the presumption of truth. *Burger*, 942 F.3d at 374. Moreover, Plaintiff has again declined to respond to this particular argument, indicating his concession. See *Bonte*, 624 F.3d at 466. Accordingly, to the extent any claims brought against McReynolds or Williamson are based on their supervisory roles, or their knowledge of their subordinates' conduct, Defendants' Motion to Dismiss is GRANTED as to those claims.

12

That being said, the court observes that the Complaints against McReynolds and
Williamson do not *solely* contemplate claims based on their supervisory roles or
condoned conduct. Plaintiff has alleged that those Defendants were "involved" in the
damage to his property, "willingly engaged" in a warrantless search of Plaintiff's
property, and "intentionally failed to protect plaintiff," among other things. Where
Plaintiff has alleged such direct and intentional conduct from McReynolds and
Williamson themselves, the court does not construe Defendants' Motion as seeking
dismissal on a lack-of-personal-involvement basis.[4]

*Sovereign Immunity*

Defendants seek dismissal of Plaintiff's remaining federal claims—those arising
under the Fourth Amendment—on the grounds of sovereign immunity.

"Section 1983 provides a federal forum to remedy many deprivations of civil
liberties, but it does not provide a federal forum for litigants who seek a remedy against
a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such
suits unless the State has waived its immunity[.]" *Will v. Michigan Dep't of State Police*,
491 U.S. 58, 66 (1989). While Congress has the power to override that immunity via
statute, the Supreme Court has held that, by limiting liability under § 1983 to "persons,"
Congress did not abrogate the States' sovereign immunity. *Id.* at 66-67. Moreover,
"[s]tate agencies are treated the same as states. Indeed, a state agency *is* the state for

---

[4] The actual task of determining which of Plaintiff's claims are insufficient
supervisor-style claims and which are based on actual personal involvement is an
onerous one, given the nature of Plaintiff's Complaints. Defendants do not attempt such
an undertaking, so the court need not do so either.

13

purposes of the eleventh amendment." *Kroll v. Bd. of Trs. of Univ. of Illinois*, 934 F.2d 904,

907 (7th Cir. 1991) (emphasis in original); *Salem v. Att'y Registration & Disciplinary*

*Comm'n of Supreme Ct. of Illinois*, 85 F.4th 438, 443 (7th Cir. 2023) ("States and their

agencies are not 'persons' for the purpose of § 1983 and therefore cannot be sued for

damages under that statute.").

The Eleventh Amendment similarly proscribes suits for damages against state

officials in their official capacities. *Will*, 491 U.S. at 71 ("Obviously, state officials

literally are persons. But a suit against a state official in his or her official capacity is not

a suit against the official but rather is a suit against the official's office. As such, it is no

different from a suit against the State itself." (internal citation omitted)).

With respect to the IDNR itself as a Defendant here, the analysis is

straightforward. As a state agency, the IDNR is no different from the state itself for

Eleventh Amendment purposes. See *Salem*, 85 F.4th at 443. A suit against the IDNR

cannot proceed in federal court. See *Illinois Dunesland Pres. Soc'y v. Illinois Dep't of Nat.*

*Res.*, 461 F. Supp. 2d 666, 672 (N.D. Ill. 2006) (dismissing IDNR as defendant on

Eleventh Amendment grounds). Accordingly, the IDNR is DISMISSED as a Defendant

from this matter.[5]

Defendants argue that the same result is required with respect to each individual

Defendant, but only briefly. They assert: "Plaintiff brings claims against the individual

defendants, Williamson, McReynolds, Viverito, Sanford, and Cottrell, in their official

---

[5] As will be seen in the following section, Plaintiff's state law claims against the
IDNR may also not proceed in this court.

14

capacity as agents or servants of the IDNR. Therefore, they are considered arms of the state, and any claim for monetary damages against them should be dismissed."

Here Plaintiff pushes back, insisting in his Response that he is suing each Defendant in their individual capacity. He asserts that his claims are thus not barred by the Eleventh Amendment.

"On a motion to dismiss, defendants have the burden of demonstrating the legal insufficiency of the complaint—not the plaintiffs or the court." *Reyes v. City of Chicago*, 585 F. Supp. 2d 1010, 1017 (N.D. Ill. 2008) (citing *Yeksigian v. Nappi*, 900 F.2d 101, 104-105 (7th Cir. 1990)). Defendants have failed to demonstrate that Plaintiff's suits against the individual Defendants are official capacity suits. In fact, they have made no effort to suggest why the court should reach that conclusion. And the court cannot discern such a basis.

To be sure, none of Plaintiff's Complaints state explicitly whether they are brought against the individual Defendants in their individual or official capacities. But the Seventh Circuit has "declined to adopt a rigid rule that presumes a § 1983 plaintiff is suing a defendant in her official capacity simply because the complaint is silent. Instead, courts must evaluate the complaint in its entirety and look to the conduct alleged to determine whether the plaintiff intends to sue the defendant in an official or individual capacity." *Orr v. Shicker*, 147 F.4th 734, 739-40 (7th Cir. 2025) (cleaned up).

"[I]n a suit where the complaint alleges the tortious conduct of an individual acting under color of state law, an individual capacity suit plainly lies, even if the plaintiff failed to spell out the defendant's capacity in the complaint." *Hill v. Shelander*,

15

924 F.2d 1370, 1374 (7th Cir. 1991). Where a plaintiff alleges "that each defendant violated federal law through individual wrongdoing," that suggests an individual capacity suit. *Digiore v. State of Ill.*, 962 F. Supp. 1064, 1078 (N.D. Ill. 1997). Requests for punitive damages and the failure to allude to any policy or custom are also indicative of an individual capacity suit. *Hill*, 924 F.2d at 1374.

Plaintiff's Complaints, convoluted though they may be, seem to present run-of-the-mill individual capacity claims under § 1983. He asserts that each individual Defendant, acting under the color of law, violated his constitutional rights. He requests punitive damages and, despite checking nearly every other available box in the form Complaints, has not checked the box corresponding to a dispute with agency policy or custom. There is simply no basis on which the court might conclude that Plaintiff intended to bring official capacity suits. Accordingly, Defendants' Motion to Dismiss on this basis must be DENIED.

*State Law Claims*

Plaintiff raises a laundry list of state law torts committed by the various Defendants, referencing trespassing, intentional infliction of emotional distress, negligence, false imprisonment, malicious prosecution, and slander. And these are just the torts that he names explicitly. His allegations also suggest claims for conversion, battery, and potentially more.

16

Defendants, understandably, make no effort to discern precisely which state law claims Plaintiff intends to bring, let alone what factual allegations might support them. Instead, they argue that all of Plaintiff's state law claims are barred by Illinois' sovereign immunity statutes.

Under the *Erie* doctrine, state immunity rules govern claims in federal court arising under state law. *Murphy v. Smith*, 844 F.3d 653, 656 (7th Cir. 2016) (citing *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938)), aff'd, 583 U.S. 220 (2018); *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001).

The Illinois State Lawsuit Immunity Acts provides that, except as provided in, inter alia, the Court of Claims Act, "the State of Illinois shall not be made a defendant or party in any court." 745 Ill. Comp. Stat. 5/1. The Court of Claims Act provides that the Court of Claims "shall have exclusive jurisdiction to hear . . . [a]ll claims against the State for damages in cases sounding in tort[.]" 705 Ill. Comp. Stat. 505/8(a), (d).

Of course, "[n]aming state employees as defendants would be too simple an evasion of the statute, which 'cannot be evaded by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested.'" *Murphy*, 844 F.3d at 658 (quoting *Sass v. Kramer*, 381 N.E.2d 975, 977 (Ill. 1978)). Thus, "[a] substantial body of Illinois case law addresses when and under what circumstances the immunity statute applies to claims against state employees." *Id.*

17

A claim against a state employee is a claim against the state, and therefore may only be brought in the Illinois Court of Claims, when:

> there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.

*Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990); see *Armato v. Grounds*, 944 F. Supp. 2d 627, 635 (C.D. Ill. 2013) (considering *Healy* factors and dismissing claim that could only be brought in the Court of Claims), aff'd, 766 F.3d 713 (7th Cir. 2014).

Each of these elements is well-illustrated, in the context of law enforcement officers, in the case of *Green v. Illinois*, 229 N.E.3d 387, 395 (Ill. App. Ct. 2023). First, as to scope of authority requirement, the court explained that "it is not sufficient merely to allege, in conclusory terms, that a defendant did something unlawful." *Id*.

> Because sovereign immunity presupposes the possibility of a legal wrong by a state employee, and legal wrongs are, *per se*, unauthorized, the relevant question cannot be whether the employee had authority to commit the legal wrong, but, rather, whether the employee intended to perform some function within the scope of his or her authority when committing the legal wrong. Requiring this heightened level of specificity is necessary to prevent this exception from swallowing the rule.

*Id*. (cleaned up).

In *Green*, the court observed that the plaintiff "did not allege any specific facts supporting an inference that the troopers were doing something other than attempting to perform some function within the scope of their authority when the injury occurred." *Id*. The court agreed with the lower court's suggestion that "this could have come in the form of additional allegations that defendants harbored personal animosity toward the

decedent or that their actions were motivated by malice or some other improper or illicit purpose." *Id*. at 396.

As to the source of the troopers' duty, the court noted that the operative question is whether the defendant-employee is charged with breaching a duty imposed on him solely as a result of his employment, or a duty imposed on him independent of his employment. *Id*. (citing *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992)). In *Green*, the plaintiff argued that the defendant troopers had breached the duty not to commit murder, a duty that applied to them independent of their status as state troopers.

The court rejected that argument, stating:

> Like the officer engaged in a high-speed chase in *Campbell*, when the defendant troopers in this case pulled over the decedent, they were unquestionably performing a function—traffic enforcement—that could not lawfully be performed by anyone other than an agent of the state. Any 'duties accompanying that operation' arose solely by virtue of their state employment.

*Id*. at 397. *Campbell v. White*, 566 N.E.2d 47 (Ill. App. Ct. 1991), referenced by the *Green* court, was a case in which the appellate court held that an action against a state trooper involved in a car accident was barred by sovereign immunity. Approving of *Campbell* in a separate case, the Illinois Supreme Court wrote: "[A]lthough the officer in *Campbell* was operating a motor vehicle, he was doing so in a manner in which *only* a governmental official is authorized to act. The operation of the vehicle, and the duties accompanying that operation, arose solely as a result of the officer's State employment." *Currie*, 592 N.E.2d at 982 (emphasis in original) (cleaned up).

19

Finally, the *Green* court turned briefly to the third element, whether the complained-of actions involve matters ordinarily within the employee's normal and official functions. The court found this requirement "easily satisfied," adopting in full the lower court's rationale: "[T]he curbing of the car for petty equipment violations and the search of the car, and actions ancillary thereto, certainly involve matters within the Troopers' normal and official functions, and those functions are a uniquely governmental function." *Green*, 229 N.E.3d at 399.

In the instant case, much, if not all,[6] of the conduct described by Plaintiff occurred in the course of the arrest of Plaintiff and the ensuing search of his property. "Conservation officers have the same powers to detain, search, and arrest as other law enforcement officers." *People v. Levens*, 713 N.E.2d 1275, 1277 (Ill. App. Ct. 1999). Like the defendants in *Green*, Defendants here were attempting to perform some function within the scope of their authority when Plaintiff's injuries occurred. They were performing functions—search and seizure—that could not lawfully be performed by anyone other than an agent of the state, and any duties accompanying that operation arose solely by virtue of their state employment. And, as in *Green*, most of the complained-of actions squarely involve matters ordinarily within Defendants' normal and official functions. The court finds that, as to the bulk of Plaintiff's state law claims, the individual Defendants are entitled to state-law sovereign immunity.

---

[6] Again, difficulties arise because it is so far from clear exactly what claims Plaintiff is trying to raise.

20

Yet the court also recognizes at least the possibility that some of the conduct referenced by Plaintiff in his Complaints does not necessarily satisfy the *Healy* factors. Take for instance the purportedly harassing phone calls to Plaintiff's family. Did these occur in the course of some IDNR investigation? Were they related to or contemporaneous with the search? The same questions might be asked of the purportedly false statements to "federal agents." And evidence fabrication or "deliberate investigative fraud must certainly be outside defendants' authority as employees of the state[.]" *Bianchi v. McQueen*, 58 N.E.3d 680, 692 (Ill. App. Ct. 2016).

Sovereign immunity is an affirmative defense, such that Plaintiff was not required to plead around it in his Complaints.[7] *Murphy*, 844 F.3d at 656; *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). But while Plaintiff's utter failure to include any meaningful factual allegations as to some of his claims might prevent a determination as to sovereign immunity, that very failure also precludes him from plausibly suggesting an entitlement to relief. See *Virnich*, 664 F.3d at 212. "Sua sponte 12(b)(6) dismissals are permitted, provided that a sufficient basis for the court's action is evident from the plaintiff's pleading." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). Plaintiff's bare references to harassing phone calls, lies, or fabrication, unaccompanied by *any* explanatory factual allegations plainly fail to satisfy the pleading standards.

---

[7] On the other hand, Plaintiff's failure to substantively respond to Defendants' state-law sovereign immunity arguments implies that he concedes the point.

21

Accordingly, Defendants' Motion to Dismiss is GRANTED as to Plaintiff's state law claims, and those claims are hereby dismissed.

*Further Proceedings*

As should be clear by now, a pervasive sense of disorder hangs over this case, created by Plaintiff's "vague, confusing, and conclusory articulation of the factual and legal basis for [his] claims and a general 'kitchen sink' approach to pleading the case." *Stanard v. Nygren*, 658 F.3d 792, 798 (7th Cir. 2011). Some of Plaintiff's claims have survived dismissal, namely, whatever claims are brought under the Fourth Amendment. Defendants' only argument as to that set of claims was a broad assertion of sovereign immunity, not requiring any claim-by-claim discussion. For that reason, and again because Plaintiff has attempted to raise every conceivable claim under the sun, it has been much easier to describe the claims that have been dismissed than those that remain.

But the court has a solution. Rule 12(e) of the Federal Rules of Civil Procedure permits a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." A court also has discretion to order a more definite statement sua sponte. *Mitchell v. Elec. Beach Tanning Salon Ltd.*, 2019 WL 1077127, at *2 (N.D. Ill. Mar. 7, 2019) (collecting cases).

22

Defendants have not yet filed a responsive pleading,[8] and it is clear that a more definite statement would not only make that undertaking significantly less burdensome, but would also greatly aid both parties and the court as the case proceeds. See *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("[A] district court should keep the case moving—if the claim is unclear, by requiring a more definite statement under Rule 12(e)[.]").

Accordingly, the court orders Plaintiff to file in this lead case, no. 17-CV-2285, a more definite statement in the form of an omnibus amended complaint that satisfies the Federal Rules of Civil Procedure. "At a minimum, Plaintiff's amended complaint should include a simple, concise statement of each claim, and clearly name the Defendant(s) against which each claim is brought." *Mitchell*, 2019 WL 1077127, at *2. Because Plaintiff's more definite statement will be in the form of an amended complaint, he is also granted leave to replead any of the claims that have been dismissed in this Order. See *Paige v. City of Fort Wayne*, 2009 WL 2401759, at *3 (N.D. Ind. Aug. 3, 2009) ("[L]eave to amend should be freely given, Fed. R. Civ. P. 15(a), particularly in pro se cases[.]"). Plaintiff's amended complaint shall be due 21 days from the date of this Order.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motion to Dismiss (#59) is GRANTED in part and DENIED in part as described herein.

---

[8] "A motion to dismiss is not a responsive pleading." *Haven v. Polska*, 215 F.3d 727, 732 (7th Cir. 2000).

(2) All claims against Defendant Illinois Department of Natural Resources are

DISMISSED, and the IDNR is dismissed as a Defendant in this matter.

(3) Plaintiff is ORDERED to file an omnibus amended complaint within 21 days

of this Order. The amended complaint shall provide a more definite

statement of Plaintiff's claims, as discussed herein.

(4) This matter is referred back to the magistrate judge for proceedings consistent

with this Order.

ENTERED this __3rd__ day of February, 2026.

s/Colin Stirling Bruce
COLIN S. BRUCE
U.S. DISTRICT JUDGE